IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BARBARA KAY WOOD, | : | 3:12-cv-2506 |
| Plaintiff, | : | |
| v. | : | Hon. John E. Jones III |
| CAROLYN COLVIN, Commissioner of Social Security, | : | |
| Defendant. | : | |

# MEMORANDUM

### March 27, 2014

The above-captioned action is one seeking review of a decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Barbara Kay Wood's ("Plaintiff" or "Wood") claim for disability benefits under the Social Security Act. The administrative record has been submitted and the issues have been briefed by the parties. (Docs. 10, 15, 16). Accordingly, this matter is ripe for our review. For the reasons that follow, we shall affirm the decision of the Commissioner.

## I.     STANDARD OF REVIEW

When considering a social security appeal, we have plenary review of all legal issues decided by the Commissioner. *See Poulos v. Commissioner of Social Security,* 474 F.3d 88, 91 (3d Cir. 2007); *Schaudeck v. Commissioner of Social*

*Sec. Admin.,* 181 F.3d 429, 431 (3d Cir. 1999); *Krysztoforski v. Chater,* 55 F.3d 857, 858 (3d Cir. 1995). However, our review of the Commissioner's findings of fact pursuant to 42 U.S.C. § 405(g) is to determine whether those findings are supported by "substantial evidence." *Id.; Brown v. Bowen,* 845 F.2d 1211, 1213 (3d Cir. 1988); *Mason v. Shalala,* 994 F.2d 1058, 1064 (3d Cir. 1993). Factual findings which are supported by substantial evidence must be upheld. 42 U.S.C. §405(g); *Fargnoli v. Massanari,* 247 F.3d 34, 38 (3d Cir. 2001)("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently."); *Cotter v. Harris,* 642 F.2d 700, 704 (3d Cir. 1981)("Findings of fact by the Secretary must be accepted as conclusive by a reviewing court if supported by substantial evidence."); *Keefe v. Shalala,* 71 F.3d 1060, 1062 (2d Cir. 1995); *Mastro v. Apfel,* 270 F.3d 171, 176 (4th Cir. 2001); *Martin v. Sullivan,* 894 F.2d 1520, 1529 & 1529 n.11 (11th Cir. 1990).

Substantial evidence "does not mean a large or considerable amount of evidence, but 'rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood,* 487 U.S. 552, 565 (1988)(quoting *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229 (1938)); *Johnson v. Commissioner of Social Security,* 529 F.3d 198, 200 (3d Cir. 2008);

*Hartranft v. Apfel,* 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence has been described as more than a mere scintilla of evidence but less than a preponderance. *Brown,* 845 F.2d at 1213. In an adequately developed factual record substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Federal Maritime Commission,* 383 U.S. 607, 620 (1966). Substantial evidence exists only "in relationship to all the other evidence in the record," *Cotter,* 642 F.2d at 706, and "must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. N.L.R.B.,* 340 U.S. 474, 488 (1971). A single piece of evidence is not substantial evidence if the Commissioner ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason,* 994 F.2d at 1064. The Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Johnson,* 529 F.3d at 203; *Cotter,* 642 F.2d at 706-707. Therefore, a court reviewing the decision of the Commissioner must scrutinize the record as a whole. *Smith v. Califano,* 637 F.2d 968, 970 (3d Cir. 1981); *Dobrowolsky v. Califano,* 606 F.2d 403, 407 (3d Cir. 1979).

II.   **DISCUSSION**

### A. Sequential Evaluation Process Used by the Commissioner

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

The Commissioner utilizes a five-step process in evaluating supplemental security income claims. *See* 20 C.F.R. § 416.920; *Poulos,* 474 F.3d at 91-92. This process requires the Commissioner to consider, in sequence, whether a claimant (1) is engaging in substantial gainful activity,[1] (2) has an impairment that is severe or a

---

[1] If the claimant is engaging in substantial gainful activity, the claimant is not disabled and the sequential evaluation proceeds no further. Substantial gainful activity is work that "involves doing significant and productive physical or mental duties" and "is done (or intended) for pay or

combination of impairments that is severe,[2] (3) has an impairment or combination of impairments that meets or equals the requirements of a listed impairment,[3] (4) has the residual functional capacity to return to his or her past work and (5) if not, whether he or she can perform other work in the national economy. *Id.* As part of step four the administrative law judge must determine the claimant's residual functional capacity. *Id.*[4]

Residual functional capacity is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. *See* Social Security Ruling 96-8p, 61 Fed. Reg. 34475 (July 2,

---

profit." 20 C.F.R. § 416.910.

[2] The determination of whether a claimant has any severe impairments, at step two of the sequential evaluation process, is a threshold test. 20 C.F.R. § 416.920(c). If a claimant has no impairment or combination of impairments which significantly limits the claimant's physical or mental abilities to perform basic work activities, the claimant is "not disabled" and the evaluation process ends at step two. *Id.* If a claimant has any severe impairments, the evaluation process continues. 20 C.F.R. § 416.920(d)-(g). Furthermore, all medically determinable impairments, severe and non-severe, are considered in the subsequent steps of the sequential evaluation process. 20 C.F.R. §§ 416.923 and 416.945(a)(2). An impairment significantly limits a claimant's physical or mental abilities when its effect on the claimant to perform basic work activities is more than slight or minimal. Basic work activities include the ability to walk, stand, sit, lift, carry, push, pull, reach, climb, crawl, and handle. 20 C.F.R. § 416.945(b). An individual's basic mental or non-exertional abilities include the ability to understand, carry out and remember simple instructions, and respond appropriately to supervision, coworkers and work pressures. 20 C.F.R. § 416.945(c).

[3] If the claimant has an impairment or combination of impairments that meets or equals a listed impairment, the claimant is disabled. If the claimant does not have an impairment or combination of impairments that meets or equals a listed impairment, the sequential evaluation process proceeds to the next step.

[4] If the claimant has the residual functional capacity to do his or her past relevant work, the claimant is not disabled.

1996). A regular and continuing basis contemplates full-time employment and is defined as eight hours a day, five days per week or other similar schedule. The residual functional capacity assessment must include a discussion of the individual's abilities. *Id*; 20 C.F.R. § 416.945; *Hartranft,* 181 F.3d at 359 n.1 ("'Residual functional capacity' is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).").

### B.  Plaintiff's Background and the ALJ's Decision

Plaintiff was born on September 3, 1961 and was 45 years old at the time of the alleged disability onset date, which is defined as a younger individual. 20 C.F.R. § 404.1563 and 416.963. She has a limited education, and has past relevant work as a deli worker, nursing aide, housekeeper and assembler. Plaintiff alleges that she has been disabled since September 20, 2006, following a complex fracture of her wrist that required surgery, and a subsequent fall which reinjured her wrist.

Following a hearing, Administrative Law Judge ("ALJ") Sridhar Boini determined that the Plaintiff was not disabled and therefore not entitled to disability benefits or disability insurance benefits. We shall hereafter summarize the ALJ's findings and decision.[5]

---

[5] The Plaintiff's application was before ALJ Boini following a remand from the Appeals Council. In an Order dated August 7, 2010, the Appeals Council vacated a prior decision (of a different ALJ) denying Plaintiff's application for benefits and remanded the matter to ALJ Boini with specific instructions to obtain additional evidence concerning the claimant's impairments to

At step one of the sequential evaluation process, the ALJ determined that the Plaintiff had not engaged in substantial gainful activity since September 20, 2006, the alleged onset date of the Plaintiff's disability. (ALJ Boini's Decision, dated May 16, 2011 (hereinafter "Boini Decision"), p. 3). At step two of the evaluation process, ALJ Boini concluded that Wood has the following severe impairments: status post right wrist fracture, history of right shoulder bursitis, bilateral degenerative joint disease of the knee with pain, obesity, depression, history of learning support, and personality disorder. (Boini Decision, p. 4). At step three of the process, ALJ Boini found that the Plaintiff's impairments did not or in combination meet or equal a listed impairment.

At step four of the sequential process, ALJ Boini determined that Wood has the residual functional capacity ("RFC") to perform less than the full range of sedentary work as defined in 20 C.F.R. § 404.1567(a) and 416.967(a). (Boini Decision, p. 6). When setting Wood's RFC, the ALJ specifically noted that:

> While the claimant is capable of lifting and carrying up to ten pounds occasionally and five pounds frequently with sitting capability of up to six hours in an eight-hour day and standing or walking up to two hours in an eight-hour workday, the claimant is limited to occupations that require no more than frequent use of the bilateral upper extremities specifically precluding continuous or repetitive use of the

---

complete the administrative record, evaluate the claimant's mental impairments, give further consideration to the Plaintiff's maximum RFC, and to obtain evidence from a vocational expert to clarify the effects of the impairments on the claimant's occupational base.

> upper extremities. The claimant should not be required to climb ladders, ropes, or scaffolds except on an emergent basis, however, the claimant may occasionally climb ramps or stairs. While the claimant is further limited to occupations that do not require frequent crawling, the claimant may engage in sto[o]ping or crouching on a frequent basis. The claimant may reach laterally with her upper extremities but overhead reaching with her right upper extremity is limited to occasional. Cognitively, the claimant is limited to occupations in a stable work environment not subject to frequent changes in the work setting. The claimant is precluded from occupations requiring the performance of complex decision-making or dispute resolution and the performance of independent judgment such as resolving discrepancies in the work place on her own without the ability to involve a supervisor or team lead.

(Boini Decision, pp. 6-7). In setting Wood's RFC, ALJ Bioni undertook a detailed review of Wood's medical file and Wood's own testimony.

Finally, at step five of the process, the ALJ determined that Wood was unable to perform any past relevant work, 20 C.F.R. § 404.1565 and 416.965, but that considering her age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that she can perform. 20 C.F.R. §§ 404.1569, 404.1569(a), 416.969 and 416.969(a). The vocational expert opined that Wood could perform jobs such as telephone receptionist, sorter and assembler of small products.

### C. Analysis

Plaintiff raises three issues in the instant appeal. First, she asserts that the ALJ failed to properly consider and failed to explain why he rejected the treating

source opinions of Dr. Lucille Venturanza and Dr. Michael Lavin. Second, the Plaintiff argues that the hypothetical question posed to the vocational expert did not identify all of Plaintiff's impairments and limitations as indicated by the record. Finally, the Plaintiff contends that the ALJ exhibited a bias against her in the proceedings.

Taking Plaintiff's last contention first, we note that Plaintiff's brief is rife with contentions concerning ALJ Boini that are not part of the record, including allegations that ALJ Boini "appeared to be under the influence of alcohol or another controlled substance" and "was not focused on the hearing testimony." (Doc. 15, p. 9). The Plaintiff also argues that the ALJ was discourteous to her throughout the hearing, thus exhibiting a bias. To support this contention, the Plaintiff submits that ALJ Boini has been placed on administrative leave due to an inappropriate relationship with a staff member, but does not posit how that suspension affected the ALJ's decision in her case.

The Court has carefully reviewed the transcript of the hearing in this case, and while we do note instances where the ALJ asked the Plaintiff to repeat her answers, there is no indication that the ALJ was under the influence of any substances. It appears more likely that the ALJ did not hear the Plaintiff's responses in the first instance, and thus asked her to repeat them. Further, we do

not find that the ALJ was being discourteous to the Plaintiff or her counsel during the hearing. Rather, we find that the ALJ's interactions with the claimant and her counsel were entirely appropriate, and that the ALJ was running an efficient and professional hearing room. Moreover, Plaintiff's counsel did not ask the ALJ to recuse himself at the time of the hearing, nor is there any indication that counsel followed up with any type of formal complaint, which greatly discredits Plaintiff's contentions in this regard. Accordingly, we reject the Plaintiff's argument that the ALJ was biased.

Next we turn to the Plaintiff's contention that the ALJ failed to give appropriate weight to the treating source opinions of Drs. Venturanza and Lavin. Both Drs. Venturanza and Lavin performed psychiatric evaluations on the Plaintiff. In March of 2008, Dr. Lavin set Plaintiff's Global Assessment of Function Score (GAF) at 52. Thereafter, in February of 2009, Dr. Venturanza set Plaintiff's GAF at 45.[6] It appears that Plaintiff is particularly chagrined by this line in the ALJ's opinion: "Though the GAF is not a residual functional capacity itself, the score does serve as an indicator. In this case, the GAF does not preclude work activity." (Boini Decision, p. 9).

---

[6] A GAF range of 41-50 is considered by the American Psychiatric Association Guidelines to indicate serious symptoms or limitations.

While at first blush the above statement seems rather conclusory, when taken in context, it is evident that the ALJ considered the entire range of Plaintiff's changing GAF - notably by March of 2009 her GAF rose to 50 and in January of 2010 it was again elevated to 55.  (Boini Decision, p. 9).  It is true that Wood's GAF was its lowest in February of 2009 at a level of 45, however, from that point on it consistently rose with commensurate changes in her prescription drug regimen. Moreover, the ALJ was not incorrect in his statement that the GAF is not the same as a RFC, but that it does serve as an indicator when considering a claimant's ability to work.   In setting the Plaintiff's RFC, the ALJ determined that the medical file as a whole coupled with Plaintiff's own testimony indicated that Plaintiff was capable of working within the assessment made by the ALJ.  Thus, we do not agree with the Plaintiff that the ALJ rejected the opinions of Drs. Venturanza and Lavin.  We find that the record shows that those opinions were considered and given their appropriate weight by the ALJ in consideration of the Plaintiff's medical file as a whole.

Finally, Plaintiff contends that the ALJ's hypothetical to the vocational expert did not identify all of Plaintiff's limitations and impairments.   The Court has thoroughly reviewed the exchange between the ALJ and the vocational expert at the Plaintiff's hearing (Hearing Transcript, p. 41-48).  In this exchange, the ALJ

identifies all of the Plaintiff's limitations and symptoms to the vocational expert, including her physical limitations and mental impairments. In fact, the ALJ limited the Plaintiff to no more than frequent use of her wrist, even though none of Plaintiff's physicians opined that she had wrist limitations, demonstrating that the ALJ was overly inclusive of the Plaintiff's conditions when questioning the vocational expert. Further, we find no error in the ALJ engaging the vocational expert in a separate hypothetical question wherein he permitted light use of Plaintiff's upper extremities, inasmuch as Plaintiff's medical file did not indicate she was prohibited from using her upper extremities or wrists. Based on the foregoing, we find that the hypothetical question(s) posed to the vocational expert by the ALJ to be entirely appropriate.

### III.   CONCLUSION

Our review of the administrative record reveals that the decision of the commissioner is supported by substantial evidence. We will, therefore, pursuant to 42 U.S.C. § 405(g) affirm the decision of the Commissioner.

An appropriate Order will be entered.